UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN H. LEAF,
   An individual citizen of Michigan,

              Plaintiff.

v.

NIKE INC.,
   An Oregon Corporation,

WIEDEN + KENNEDY, INC.
   An Oregon Corporation,


FACEBOOK INC.,
   A Delaware Corporation,

GOOGLE LLC,
   A Delaware limited liability company,

YOUTUBE, L.L.C.,
   A Delaware limited liability company,

TWITTER, INC., A Delaware corporation,

              Defendants.


.

Case 2:20-cv-11491-GCS-RSW

**PLAINTIFF'S BRIEF IN
OPPOSITION TO
DEFENDANT NIKE'S
MOTION TO DISMISS.
ORAL ARGUMENT
REQUESTED**

i

**PLAINTIFF'S BRIEF IN OPPOSITION TO  DEFENDANT NIKE'S
<u>MOTION TO DISMISS. ORAL ARGUMENT REQUESTED</u>**

"Anti-Semitism, or any hate, becomes dangerous in any society when three things happen: when it moves from the fringes of politics to a mainstream party and its leadership; when the party sees that its popularity with the general public is not harmed thereby; *and when those who stand up and protest are vilified and abused for doing so."*  - Rabbi Lord Jonathan Sacks

## **TABLE OF CONTENTS**

I. INTRODUCTION ..............................................................................1

II. DEFENDANT FAILS IN THEIR BURDEN TO DISMISS COUNT I. ..............4

   A.   Plaintiff Sufficiently Alleges Racist Jew Hatred As A Material Fact. .........5

   B.   Plaintiff Sufficiently Alleges Child Pornography And Pornography
Promoted To Children As A Material Fact. ....................................................9

   C.   Leaf Could Not Have Reasonably Known About The Subliminal Overt and
Subtle messages of Racist Jew-hatred and Pornography ...............................11

III. DEFENDANT FAILS IN THEIR BURDEN TO DISMISS COUNT II. .........15

   A.   The *Leaf v Refn* Requirement Contradicts *Brownlow v. McCall
Enterprises, Inc.*, 315 Mich. App. 103, 888 N.W.2d 295 (2016). ...................17

   B.   The *Leaf v Refn* opinion Violates Applicable Authority Regarding
Statutory Construction. ...............................................................................18

IV. DEFENDANT NIKE FAILS IN THEIR AFFIRMATIVE DEFENSE
REGARDING THE FIRST AMENDMENT ........................................................22

   A.   Nonconscious Content Doesn't Get First Amendment Protection. .......... 22

   B.   Nike's Denial And Promotion Of The Nike Ad, Which Is Commercial
Speech, Is Misleading And Therefore  Can Be Regulated Under The Test In
*Central Hudson Gas & Elec. V. Public Serv. Comm'n,*   447 U.S. 557 (1980). It
Is Commercial Speech Because It Does Nothing More Than Propose A
Transaction And It Also Satisfies The Test In  *Bolger v Youngs,* 463 U.S. 60,  66
(1983),  A Three Part Test.........................................................................24

V. CONCLUSION ..................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ....................................................4,6

*Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)* ..............................4,5

*Brownlow v. McCall Enterprises, Inc.*, 315 Mich. App. 103, 888 N.W.2d 295
    (2016) ............................................................................ 17, 18,19,20, 21

*Central Hudson Gas & Elec. v. Public Serv. Comm'n*,   447 U.S. 557 (1980)...... 24

*Collins v. A1 Motors, LLC*, No. 330004, 2017 WL 1190932, at *7 (Mich. Ct. App.)
    Mar. 28, 2017) ..................................................................................21

*Erie County, Ohio v. Morton Salt, Inc., 702 F.3d 860, 867(6th Cir. 2012)* ..........4, 5

*Ford Motor Co v Woodhaven,* 475 Mich. 425, 438; 716 N.W.2d 247 (2006). ..... 19

*Gilmer v. Buena Vista Home Video, Inc.*,939 F.Supp. 665 (W.D.Ark.1996)........ 23

*Hoven v. Walgreen Co., 751 F.3d 778, (6th Cir. 2014)* ........................................21

*Keys v. Humana, Inc*., 684 F.3d 605, 608 (6th Cir. 2012) ...................................4

*Leaf v Refn*, 742 F. App'x 917, 927 (6th Cir. 2018) .................................... 16, 17

*Luis v. Zang, 833 F.3d 619, 625 (6th Cir. 2016)* ................................................4

*Price v Long Realty, Inc,* 199 Mich. App. 461,471; 502 N.W.2d 337 (1993).......20

*Waller v. Osbourne,* 763 F.Supp. 1144, 1148 (M.D.Ga.1991) ...........................23

*Zine v Chrysler Corp.* 236 Mich App 261, 282; 600 NW2d 384 (1999).............. 16

**Statutes**

MCL §445.903(1) (s) ............................................................................17

MCL §445.903(1)(cc) ........................................................... 16, 17, 19, 21

MCL 211.1 *et. seq.* ............................................................................ 19

## Other Authorities

FCC 74-78...................................................................................................1

## Rules

FRCP 12(b)(6)........................................................................................4,24

FRCP 15(a)(2) ........................................................................................15

FRCP 15(a)(2), .......................................................................................3

## Constitutional Provisions

First Amendment....................................................................................25

## Online Articles

https://www.annefrank.org/en/topics/antisemitism/antisemitism-form-racism/ retr.2

https://www.washingtonpost.com/archive/business/1997/06/25/nike-pulls-shoes-
     that-irked-muslims/b02211fb-c120-4780-9ce4-4c01225c8e92/ ..........................3

## I. INTRODUCTION

Defendant Nike's Ad – *The Last Game* – hereafter "The Nike Ad",  can be expected to promote Defendant Nike and their products. It is also reasonable to expect that Defendant Nike would use their presumably vast toolset of techniques - including many that the viewer is unaware of - to convince the viewer to buy Defendant Nike's products. The reasonable consumer, including Leaf,  would hope that the techniques used by Defendant Nike to sell Nike and its gear would not include techniques considered deceptive, such as nonconscious techniques including subliminal because those are intended to be deceptive[1].

However, many of The Nike Ad's illegal sexual and Racist hate promoting messages – including Terrorism promoting as the proposed SAC alleges - employ the nonconscious (FAC Ex. 0, Affidavit of Dr.  Michael Motley UC-Davis, ¶'s 81, 89-92, 99, 100):

> 99. In my opinion, all of these hateful messages in the Nike advertisement are intentional and exploit the well documented pre-

---

[1] FCC 74-78, BROADCAST OF INFORMATION BY MEANS OF `SUBLIMINAL PERCEPTION' TECHNIQUES, issued January 24, 1974: "We believe that the use of subliminal perception is inconsistent with the obligations of a licensee, and therefore we take this occasion to make clear that broadcasts employing such techniques are contrary to the public interest. Whether effective or not, **such broadcasts clearly are intended to be deceptive.**" [Emphasis added]

1

existing hatred of Jews among soccer fans in order to sell more Nike gear.

100. These aforementioned stealthy methods of promoting hate "under the radar," without conscious awareness, can be adapted to promote hate against any group, such as Muslims, Blacks, *Republicans*, Democrats, etc. [Emphasis added]

Using these illegal methods, Defendant Nike can "get away with it" in order to make more money, depicting sexual content in an unlawful manner, hate, and now terrorism.

Virtually everyone would be outraged, including Leaf, if they knew Defendant Nike was using all their vast skillset, in an unethical and illegal way  - including criminal techniques - to disseminate pornography, sexual acts and images, child pornography, and advanced Racist[2] messages of hate primarily but not exclusively manifesting hatred for Jews.

Because heretofore no one would ever *suspect* such a thing from Defendant Nike, let alone *know* this was the case - in an animated soccer commercial directed to minors, and because Nike affirmatively and falsely denied to Leaf that such content was in The Nike Ad and never revealed to Leaf what was really in The

---

[2] Jew hatred is also a form of racism for two reasons: You are Jewish if you are born Jewish, and the Nazis and Neo Nazis and Jew haters base their hatred of Jews and characteristics Jews share because they are born Jewish. https://www.annefrank.org/en/topics/antisemitism/antisemitism-form-racism/ retrieved August 10, 2020. "According to the Nazis, the Jews were a weak, dangerous, and inferior race that did not belong in Germany."

Nike Ad, and because Leaf watched The Nike Ad and *eventually* discovered *some* of the uncivilized and therefore material content some of which is described above and herein, Leaf's complaint is a plausible cause of action. Nike also affirmatively stated they would "tighten scrutiny of logo design" after Muslims complained in 1997. Nike Pulls  Shoes that Irked Muslims https://www.washingtonpost.com/archive/business/1997/06/25/nike-pulls-shoes-that-irked-muslims/b02211fb-c120-4780-9ce4-4c01225c8e92/

The First Amendment provides no haven for such Genocidal, and therefore uncivilized, and prurient/obscene deceptive commercial behavior.

Finally, Plaintiff's FAC provides sufficient factual support for plausible claims that Plaintiff alleges. However, this pleading on occasion refers to Plaintiff's proposed SAC, only to illustrate additional facts Plaintiff expects this Court to allow since leave to Amend "should be granted freely when justice requires" FRCP 15(a)(2), which is clearly the case here since discovery has not commenced and the new content in the SAC that has been discovered was hidden in The Nike Ad, and is germane especially to Count II.

Therefore, Plaintiff, by occasionally referencing the proposed SAC herein is not trying to convert this 12(b)(6) motion into a Rule 56 motion.

3

## II. DEFENDANT FAILS IN THEIR BURDEN TO DISMISS COUNT I.

Defendant Nike's motion to dismiss is for "failure to state a claim upon which relief can be granted" under FRCP 12(b)(6). A court "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc*., 684 F.3d 605, 608 (6th Cir. 2012) (internal citation omitted).

At the same time, the complaint must be plausible. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Erie County, Ohio v. Morton Salt, Inc., 702 F.3d 860, 867(6th Cir. 2012)* quoting *Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007).* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…" *Luis v. Zang, 833 F.3d 619, 625 (6th Cir. 2016)* citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *Zang,* went on to say, "The complaint must therefore "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Id*. 625-626.

The U.S. Supreme court has ruled that, "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations… a plaintiff's obligation to provide the  "grounds" of his "entitle[ment] to relief"

4

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…"*Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)* (internal citation omitted).  Subsequently the 6th Circuit held that, "Rather, "a well-pleaded complaint may proceed *even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.*" "  *Erie County, Ohio v. Morton Salt, Inc., 702 F.3d 860, 867 (6th Cir. 2012)* [Emphasis added]

Finally,  the *Zang* court held,  "In evaluating a motion to dismiss, we "may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Id.*  at 626 (internal citation omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable and plausible inference that the defendant is liable for the misconduct alleged and does not allege a mere possibility.

### A. Plaintiff Sufficiently Alleges Racist Jew Hatred As A Material Fact.

Defendant first argues that anti-Semitism in The Nike Ad can never be a material fact because it can never be a fact, it is an "idiosyncratic opinion" (ECF #23 Motion to Dismiss, p. 9). Defendant Nike's counsel fails to reveal facts that are material to this Court in light of their statement regarding "idiosyncrasy". Leaf's "opinion" regarding the anti-Semitism is backed by the Affidavits of Dr. Motley, Ex. 0, Lawrence Porte, Ex. 98 -  former head of Detroit Secret Service, the ZOA and their attorney Ex. 95, and many individuals manifest in the comments in the cited online articles.

However, Plaintiff's FAC, Count I references numerous material facts including pornography of various sorts (ECF #16 FAC, ¶¶  39, 44, 46,  Exs.15, 20; ECF #17 Notice of Filing Under Seal) and various types of messages of Racist hate (ECF #16 FAC, ¶ 56 ECF #16  Ex. 0, Affidavit of Dr.  Motley, ¶'s 99-100). It is Defendant's burden to show why these material facts cannot be manifest in The Nike Ad, and Defendant only states a conclusion. So Defendant's argument regarding material facts fails.

The FAC alleges advanced Racist messages of hate and that must be assumed to be true under *Ashcroft v. Iqbal at* 678. The FAC goes beyond what is sufficient and shows the Racist images and the corresponding historic and contemporary Nazi propaganda in various Exhibits throughout, just for good measure.

6

The Nike Ad, in addition to the messages of hate supported by the various exhibits, which must be accepted as true, makes it also plausible that the only Plaintiff Exhibits Defendant addressed (ECF #23 Motion to Dismiss, p.16) – the images in the very beginning of The Nike Ad – are Nazi messages of Jew hatred.

Defendant essentially dismissed - without substantive argument - that all the alleged [Nazi] messages of Racial Jew hatred were a figment of Leaf's imagination. Except for one thing: Why is there a subliminal Nazi swastika placed adjacent to a copy of the same Nike logo later in The Nike Ad, nonconsciously on a wall? See Exs. 1, 2.

The Nike Ad (Ex. 3), at about thirteen seconds, shows a very brief message of advanced Jew hatred – Ex. 4. As alleged in the complaint, it brilliantly and skillfully manifests three main Nazi anti-Semitic messages:

The hooked nosed Jew – Ex. 5 -  the Jew controlling the world (the crown – Ex. 5), and the Jew as Devil – Ex 5. The FAC shows the equivalent hateful historic Nazi propaganda images.

The Jew as Devil message of hate is also brilliantly and skillfully manifest in four ways. Devil is non-consciously spelled out – Ex 5. "Devil" is also skillfully and creatively typographically used to form a Devil – Ex 6.

The Devil is also, again brilliantly and skillfully attached to the hooked nose Jew, a common Nazi theme that the Jew and the Devil are intimately connected,

7

sharing a common ear – Ex 6. Defendant Nike also emphasizes the Jew Devil with the fuchsia Devil's tail – Ex 4.  There is a fake crown shadow to emphasize the "Kike Crown" – Ex 4.  *All this for something not consciously perceived.*

Defendant Nike displays nonconscious Devils only on the jerseys of "The Jews" throughout The Nike Ad – Exs. 7-8.

Plaintiff also claims (ECF #16 FAC, ¶¶ 45, 89)  that The Nike Ad contains an advanced message of Racist Jew Hatred – among many cited – by displaying the word "Kike" – Ex. 9 –  which of course to Jews is equivalent to the "N" word for Blacks.

The Court must accept this as true.  The skillful way Defendant Nike displayed the Devil is also manifest in Kike. Notice the Devil's tail again emphasized nonconsciously.

Ex. 10 is the nonconscious word "ISIS" with an axe in The Nike Ad[3]. It is clear for purposes of this pleading that the court can accept this fact as true, as required, especially in light of the techniques used in The Nike Ad regarding the word Devil and Kike, and now ISIS. Exhibit 11 includes Hebrew letters spelling the words: "Come On Vulture".

---

[3] Plaintiff's Proposed SAC alleges – with factual support – Defendant Nike's promotion of Islamic Terror against America and Jews, and non-Muslims.

Ex. 12 is a clear Jewish Star on the bad guys, with subliminal Israeli flags in the background.

Ex. 13 is a clear Israeli flag on the bad guy's stadium.

Leaf alleges sufficient factual basis in the FAC , including virtually all the Exhibits - Devils, Serpents, Insects, etc.. – and the alleged plot elements – starting with Jews controlling soccer and basketball and then expanding into other areas, for their own gain thereby ruining everything for everyone else, and subliminally communicating the message that Jews are the enemy and crucifier of Jesus, and Jews must be defeated. Leaf alleges that The Nike Ad contains messages of Jew hatred of various sorts and alleges that such a fact is material – which is plausible since people would find an anti-Semitic agenda, including a hidden one, as material i.e. important to the transaction.

## B. Plaintiff Sufficiently Alleges Child Pornography And Pornography Promoted To Children As A Material Fact.

Defendant Nike never addresses the allegations of pornography including being promoted to children and child pornography in the FAC, so this Court should deem that material fact admitted for purposes of this motion .

There is a clear depiction of masturbation by the soccer player laying on his back in the base of Christ The Redeemer. Ex. 14.

Plaintiff alleges a penis on The Neymar statue and it can be clearly seen, but what is really a creepy and illegal form of Nike promotion *is that the animated Neymar rubs his shoe with the Nike logo up and down alongside the penis. All of this nonconscious, and a very disturbing self-promotion of Nike to children.* Notice on both hands of the statue there are stigmata – nail wounds to Jesus. Ex. 15.

Plaintiff alleges, and it must be accepted as true that Ex. 16 is child pornography. This is because Plaintiff alleges the erect penis on the minor was deliberately drawn in such a manner as to be perceived as a penis and that the soccer ball and other details were drawn in such a way to be excused as a knee, but be perceived as a penis. This is just as the nonconscious masturbation, with the Nike logo shoe moving along the penis, and typographic Devil were alleged, and appear obviously to be carefully planned out.

All of the pornography and sexual related images deceptively promoted and displayed to the viewer in general and Leaf in particular, and given the fact that erotic images promoted to children is a criminal act, makes the presence of these kind of messages a material fact, which when failing to reveal such content, plausibly tends to mislead and deceive.

Based on Leaf's factual allegations, this issue regarding whether Leaf could have *reasonably* known, is ultimately up to the jury.

10

Obviously it is plausible on its face that hidden undisclosed messages of Jew hatred, because they are nonconscious, and hidden pornography because the pornography is nonconscious would deceive and mislead by its very nature.

It is also plausible that hidden pornography including child pornography directed to children, would be "a material fact", i.e. affecting Leaf's decision to view the video in the normal way, or any way.

By the same token, messages of Racist Jew hatred, including the subliminal presentation,  is also plausibly material.

### C. Leaf Could Not Have Reasonably Known About The Subliminal Overt and Subtle messages of Racist Jew-hatred and Pornography

Whether Leaf could have reasonably known about the material facts would normally be a question for the jury. For purposes of Defendant's motion, there is no evidence at all that Leaf could have known about the nonconscious Jew hatred, or the nonconscious pornography prior to viewing The Nike Ad, or even any Jew hatred because the articles were equivocal, and Leaf alleges this in the FAC ¶ 21.

However, statements that Nike has made many of which most people are presumably aware of amount to "representations of fact made in a positive manner", that ultimately the finder of fact has to consider, including the fact that weight would be given to Nike's ethical reputation based on their own statements.

11

For example the proposed SAC alleges that Leaf was aware of the representation of fact made in a positive manner that Nike did not intend to offend the Muslims in 1997, and would in the future "tighten scrutiny of logo design." Leaf was aware that Nike donated to a Muslim children's play center, proposed SAC.  Leaf was aware that Nike would never use slave labor again to make their products, proposed SAC. This in addition to Nike's disavowel of Jew hatred cited by a link in the article Leaf stated he read in the FAC ¶ 21.

With respect to Jew hatred, as the proposed SAC makes clear and the FAC ¶ 21 demonstrates, Leaf saw Defendant Nike's representation of fact prior to watching The Nike Ad (Ex. 18):

> "The logo shown on 'The Clones' player uniforms and on the advertising boards in 'The Last Game' film is a logo of a football. Any resemblance to any other symbol or image within the campaign is entirely coincidental and unintentional."

> "We respect all religions and the image was in no way designed to cause any offense," Nike said.

Leaf claims and demonstrates that he had no reasonable way of *knowing* about the alleged messages of Jew-hatred and pornography, including the nonconscious Racist hatred and nonconscious pornography, for many reasons including because the ADL was very adamant that The Nike Ad was not "anti-Semitic" – Ex. 19 (The ADL stated anyone who claims such anti-Semitism is

12

certainly "off base" and has to "really use their imagination"[4]), and *Nike denied any anti-Semitism in The Nike Ad* – Ex. 18,  which shows the linked page from Ex. 17 with the link to the Nike denial in the very first part of the first article Leaf read and he clicked that link which contained the Nike denial *prior to Viewing The Nike Ad*[5].  The comments also indicate equivalence about whether the logo was a soccer ball or Jewish Star.

Defendant Nike makes the argument that if Leaf discovers the hateful content and pornography Leaf has no injury (Nike MTD p. 12). That argument is like saying if Leaf discovers the waitperson spit in his soup causing no physical damage but emotional/mental damage the fact that he discovers the spitting 5 minutes, 5 days or 5 months after he drank the soup, means he would have no damages ? That position defies common sense, and has no basis in fact or law.

Again, Defendant claims that equivocal reviews that Plaintiff saw online regarding the logo on the bad guys caused Plaintiff to *know* that The Nike Ad contained nonconscious messages of Racist Jew hatred *including historic Nazi stereotypes and propaganda* as alleged, nonconscious pornography, including

---

[4] The ADL obviously lacks the expertise to discover the *nonconscious* anti-Semitic messages, especially on first sight. The ADL's forceful dismissal of the Anti-Semitism in The Nike Ad was relatively quick.

[5] This fact is made explicit in the proposed SAC.

13

child pornography directed to children, and the nonconscious promotion of

terrorism as alleged in the proposed SAC ( Nike's MTD p.12).

The ADL, considered the leading organization on anti-Semitism, strongly

denied anti-Semitism in The Nike Ad, and Nike disavowed any anti-Semitism.

*Defendant can find no mention anywhere* of nonconscious Racist Jew hatred

including conscious or nonconscious Nazi symbols and themes, nonconscious

pornography, and the nonconscious promotion of terrorism, prior to Leaf viewing

The Nike Ad, let alone that Leaf could have reasonably known this. In fact it

would be illegal to even show The Nike Ad as part of a study, so Leaf has the right

to know the material fact if he is being exposed to this. (FAC Ex. 0, Affidavit of

Dr. Motley, ¶ 93 , also discussing the motion picture *Drive*):

> **[I]t is possible to conduct social-scientific research to test the
> hypothesis (or opinion) that the inattentional and subliminal stimuli
> in *Drive* (and in the Nike ad) discussed above do indeed have the
> effects predicted above on individuals already predisposed toward
> anti-Semitism. And it is possible to run the same test for subjects
> more neutral toward Jews. In fact, as a social scientist, I seriously
> considered running just such an experiment. I am confident,
> however, that such a study would not be allowed by the Human
> Subjects Committee, i.e., Institutional Review Board (IRB) of my
> institution (University of California at Davis). I sat on that IRB for
> over 30 years, and Chaired it for several years. I am confident that
> the IRB would consider it unethical to expose subjects (usually
> college sophomores) to the stimuli discussed above because of the
> chance that such exposure would trigger or exacerbate biases toward**

14

**Jews. It is my opinion that the use of those symbols is unethical for the same reason in *Drive* and in the Nike ad.**

Therefore not only does Defendant Nike fail in their burden to dismiss Count I, but contrary to Defendant Nike's argument that subliminal content in and of itself does not create a cause of action, (Nike MTD p. 4), illegal and criminal content as alleged in the FAC promoted in an illegal manner does. In fact The Nike Ad's producer Jon Saunders, in his interview (FAC  p.51 fn9) stated the following: "Animation took about three to four months, *with all the testing and development work we did*."

## III. DEFENDANT FAILS IN THEIR BURDEN TO DISMISS COUNT II.

As stated in the proposed SAC and as discussed above Leaf in fact clicked on the link *at the beginning* of the online article Leaf cites in the FAC (¶21)

"The court should freely give leave [to amend] when justice so requires." FRCP 15(a)(2). Consequently the proposed SAC, if granted, as it should be, would provide additional facts relevant to the case, and the motions before the Court, but the court can properly conclude Leaf viewed the Nike denial based on the link to the Nike denial displayed at the top of the webpage the FAC cited (ECF #16 FAC, ¶ 21).

In addition Michigan case law is clear that *any* representation of fact, raises a factual question for the jury as to what has to be disclosed *in light of* those facts.

15

This means when Nike denies The Nike Ad was anti-Semitic, the jury decides if Nike has to reveal it is anti-Semitic, and contained pornography, both overt, subtle, and subliminal.

**The *Leaf v Refn*, 742 F. App'x 917, 927 (6th Cir. 2018) ruling rewards and encourages the worst forms of deception. If in the course of commerce a business does something wrong , deceptive and harmful, which is totally unexpected by the consumer, says nothing, then according to the *Leaf* opinion, *ibid*, the business gets off the hook under MCL §445.903(1)(cc) .**

***Zine v Chrysler Corp.* 236 Mich App 261, 282; 600 NW2d 384 (1999). states: "…a single act may violate more than one subsection"**

Nike's representation that The Nike Ad was in fact Nike's is sufficient for the jury to determine what else the consumer must be told in light of that fact. Any other interpretation conflates the MCPA with fraud, which it isn't.

The *Leaf v Refn* opinion erroneously concludes that a "positive representation of fact" - referred to in MCL §445.903(1)(cc) must be false and/or the opposite of the "facts material to the transaction." ""Because the trailer does not affirmatively represent that *Drive* does not . . . promote anti-Semitism," defendants claim that the requisite "positive" misrepresentation[6] is lacking. We

---

[6] "Misrepresentation" is nowhere to be found in sub-section MCL §445.903(1) (s) or (cc) of the MCPA.

16

agree." *Leaf v Refn*, 742 F. App'x 917, 927 (6th Cir. 2018).

**A.** **The *Leaf v Refn* Requirement Contradicts *Brownlow v. McCall Enterprises, Inc.*, 315 Mich. App. 103, 888 N.W.2d 295 (2016).**

The unreported *Leaf v Refn* opinion requires the wrong connection between "facts material to the transaction", and representations of facts made in a positive manner, *Leaf v Refn*, 742 F. App'x 917, 927. *Brownlow v. McCall Enterprises, Inc.,* 315 Mich. App. 103, 888 N.W.2d 295 (2016), is instructive on this point.

Brownlow, bought an ozone generator from Defendant, and was told that the ozone generator could remove smoke. Brownlow alleged a violation of MCL §445.903(1)(cc) by claiming that Defendant failed to reveal facts material to the transaction in light of representations of facts made in a positive manner. The representation of fact made in a positive manner was that the ozone generator could remove smoke.

The alleged fact material to the transaction was the damage that the ozone generator could cause. "Finally, plaintiffs argue that defendant violated MCL §445.903(1)(cc) in that it positively represented that the machine would eliminate the smoke odor *but failed to disclose that the machine could also cause collateral property damage*." *Brownlow,* 888 N.W.2d 307 [emphasis added]. The case was remanded to the trial court *for the jury* to determine if Plaintiff needed to be told about the damage the machine could cause to furniture. Obviously, the *Brownlow*

17

court determined that a fact material to the transaction did not have to be the

opposite of the fact represented - or that the fact represented had to be false.

**B.    The *Leaf v Refn* opinion Violates Applicable Authority Regarding Statutory Construction.**

Statutory interpretation in Michigan is summarized as follows *(Brownlow,*

888 N.W.2d at 307):

> "It is well-settled that " [t]he primary goal of statutory interpretation is to give effect to the Legislature's intent." *Ford Motor Co v Woodhaven,* 475 Mich. 425, 438; 716 N.W.2d 247 (2006). The first step in determining the Legislature's intent is to review the language of the statute itself. *Id.* If the language is plain and unambiguous, then this Court is to apply the statute as written. *Id.* at 438-439. "

> Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Krohn v Home-Owners Ins Co,* 490 Mich. 145, 156; 802 N.W.2d 281 (2011); see also MCL 8.3a (stating that " [a]ll words and phrases shall be construed and understood according to the common and approved usage of the language" ).

> When the words of a statute are given their plain and ordinary meaning, they provide the most reliable evidence of legislative intent. *Krohn,* 490 Mich. at 156-157 (citation omitted). Further, to give words their plain and ordinary meaning, this Court may use dictionary definitions. *Id.* at 156.

> However, " technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." MCL 8.3a."

*Brownlow*  went on to explain that the use of common law fraud in the

MCPA was limited to technical terms used in fraud." But when a statute contains a

technical term that has acquired a peculiar meaning under the law, such as " material fact," this Court may look to the common law. See, e.g., *Ford Motor Co,* 475 Mich. at 439 (referring to the common law to define the term " mutual mistake of fact," as used in the General Property Tax Act (GPTA), MCL 211.1 *et seq.* )." *Brownlow* 888 N.W.2d at 305.

Applying the above, nowhere in the relevant section of the MCPA is there language that the "positive representations of fact" be false, or that the facts material to the transaction contradict the "positive representations of fact". That is what the *Leaf v Refn* opinion is incorrectly reading into MCL §445.903(1)(cc) by requiring that the positive representation of fact contradict the "facts material to the transaction".

If the legislature wanted the meaning the *Leaf v Refn* opinion is forcing on MCL §445.903(1)(cc), the legislature would have written it that way. Such as "Failure to reveal facts material to the transaction, in light of positive representations of facts that contradict the facts material to the transaction."

*Brownlow* also chastised the defendant for trying to apply the common law tort of fraud beyond its narrow application - providing meaning to technical terms when necessary. *"However, defendant's argument erroneously* interprets the rule of law stated in *Zine,* and writes elements of fraud into the provisions of the MCPA

19

that do not, and should not, exist, thereby ignoring the longstanding principles of statutory interpretation." *Brownlow* 888 N.W.2d at 305. [Italic Emphasis in original, bold added].

Applying the above, the jury can determine that it is important for Leaf to be told that the advertisement contained pornography and subliminal, subtle, and overt Racist Jew hatred *in light of the fact* that Nike represented The Nike Ad was the product of an American publicly traded company and not,  for example,  an advertisement by and for the American Nazi party.

 "There is a genuine issue of material fact regarding defendant's liability under the MCPA, which is for the jury to decide." 888 N.W.2d at 307.

**C. The *Leaf v Refn* Requirement Regarding Revealing Facts Material To The Transaction Violates The Mandatory Requirement That The MCPA *Must* Be Liberally Construed To Remedy Deception**

The MCPA is a remedial statute designed to prohibit unfair practices in trade or commerce, [and] it *must* be liberally construed to achieve its intended goals." *Price v Long Realty, Inc,* 199 Mich. App. 461,471; 502 N.W.2d 337 (1993) [Emphasis added]. Requiring a false representation that contradicts "facts material to the transaction" when it is not provided for in the statute would clearly inhibit the intended goals of the MCPA and would be contrary to the plain language of the statute.

20

If the *Leaf v Refn* interpretation were to be accepted, then the bigger the deception, the more the deceiver would be rewarded. The bomb [deliberately] sown into the seat of the new car by the dealer - a huge deception - would not be actionable under the MCPA §445.903(1)(cc) because the dealer would have had to have said : "There is no bomb sewn into the seat of your new car".

Finally, the unpublished case the Sixth Circuit cites in support of their position, *Collins v. A1 Motors, LLC,* No. 330004, 2017 WL 1190932, at *7 (Mich. Ct. App. Mar. 28, 2017) is not precedent in Michigan, does not hold that the "positive facts" *have to be* false and contradict the "facts material to the transaction". If it did, it would be clearly overruled by *Brownlow 888 N.W.2nd 295* - which *is* precedent.

A Federal Court must predict what the Michigan Supreme Court would do if faced with the issue of what must be revealed under MCL §445.903(1)(cc).  "We must predict what the Michigan Supreme Court would do if presented with this situation." *Hoven v. Walgreen Co., 751 F.3d 778, (6th Cir. 2014)* ) (internal citation omitted).  Michigan law is clear that MCL §445.903(1)(cc) is violated when Defendant makes *any* representation but fails to reveal facts *the jury* determines the consumer needs to know based on, or *in light of* the facts revealed. It is that simple.

21

**D.       Defendant Fails To Meet Their Burden Regarding Damages.**

Again Defendant offers no substantive argument or proof why Plaintiff has

not suffered the damages alleged in the FAC – emotional damages.

Damages are easy to understand. Imagine a Black person later discovering

that the animated Nike ad he was watching, that was mainly directed to children

and adolescents, flashed quickly the left image in Ex. 20, and flashed the "N"

word. Everyone would understand the outrage. Now imagine that an equivalent or

even more offensive image is flashed to a Jew (or anyone offended by Racist Jew –

hatred, such as Leaf), with the "K" word flashed – "Kike".  Instead of a stereotype

of a black person, a stereotype of a Jew is used. Instead of typographical "gun",

there is typographical "Devil". Instead of watermelon there is the "Kike Crown".

The reasonable inference is that the Jew would be just as outrageously

offended and justifiably so, with all the damages Leaf has pled – and then some.

## IV. DEFENDANT NIKE FAILS IN THEIR AFFIRMATIVE DEFENSE REGARDING THE FIRST AMENDMENT

### A. Nonconscious Content Doesn't Get First Amendment Protection.

The Nike Ad contains nonconscious messages of hate. (FAC Ex. 0, Affidavit

of Dr.  Motley, ¶'s 99, 100, discussing Nike's promotion of hate without conscious

awareness.):

22

No case has ever held that subliminal content gets full First Amendment protection. In *Gilmer v. Buena Vista Home Video, Inc., 939 F.Supp. 665 (W.D.Ark.1996), a case involving alleged nonconscious images of naked individuals and nonconscious sexual images in Disney videos, the court noted:*

> The courts that have addressed the issue tend to afford subliminal images less First Amendment protection than perceptible images. For instance in *Vance v. Judas Priest,* No. 86–5844/86–3939, 1990 WL 130920 (D.C.Nev. August 24, 1990) the court was faced with the issue of whether verbal or audio subliminal messages contained in a record album were protected under the First Amendment. The court ruled that subliminal messages are not "speech" within the meaning of the First Amendment. The court found that: (1) subliminal messages do not advance free speech goals; (2) people have a First Amendment right to be free from unwanted speech; and (3) the listener's right to privacy is greater than the purveyor's interest in using subliminal messages.

In *Waller v. Osbourne,* 763 F.Supp. 1144, 1148 (M.D.Ga.1991), *aff'd without op.,* 958 F.2d 1084 (11th Cir.1992), *cert. denied,* 506 U.S. 916 (1992), the court noted it must:

> "initially resolve the issue of whether, as a matter of law, the song "Suicide Solution" on the album "Blizzard of Oz" contains subliminal messages as alleged by plaintiffs. The court finds this step necessary because it is convinced that the presence of a subliminal message, whose surreptitious nature makes it more akin to false and misleading commercial speech and other forms of speech extremely limited in their social value, would relegate the music containing such to a class worthy of little, if any, first amendment constitutional protection. "

*Gilmer , 939 F.Supp. at  670* concluded that:

 In each of the cases discussed, the court felt the proper characterization of the message as being subliminal or not was important to the court's analysis of the First Amendment issue. We agree that the proper characterization of the "speech" at issue may well impact on our analysis of the First Amendment issues. Particularly important will be whether the speech or expression at issue is within the bounds of First Amendment protection. This type of characterization cannot be made on the basis of a Rule 12(b)(6) motion. The motion to dismiss on the basis of the First Amendment will be denied.

Therefore, a warning to the consumer, or other remedies is not precluded by the First Amendment, and is in fact warranted based on the potential harm inherent in The Nike Ad, to the unsuspecting viewer, based on the nonconscious messages of hate, pornography and terrorism in the proposed SAC, as alleged.

**B. Nike's Denial And Promotion Of The Nike Ad, Which Is Commercial Speech, Is Misleading And Therefore  Can Be Regulated Under The Test In *Central Hudson Gas & Elec. V. Public Serv. Comm'n,*  447 U.S. 557 (1980). It Is Commercial Speech Because It Does Nothing More Than Propose A Transaction And It Also Satisfies The Test In  *Bolger v Youngs,* 463 U.S. 60,  66 (1983),  A Three Part Test.**

First, it is clear that the Nike denial that the Nike Ad was anti-Semitic and the promotion of the Nike Ad by Nike is commercial speech as defined in *Bolger, id.* (holding that if the speech is an advertisement, refers to a specific product, and is economically motivated, then it is commercial speech notwithstanding the fact that it contains other content that is not commercial speech).

It is clear that The Nike Ad promotion and The Nike Ad denial of Racial Jew hatred is an advertisement, that it refers to a specific product – The Nike Ad, and that The Nike Ad promotion is economically motivated – it is employed to sell Nike gear.

Once it is determined that The Nike Ad promotion is commercial, the applicable test is *Central Hudson Gas & Elec.,* 447 U.S. at 563, (holding that false or misleading commercial speech can be regulated by the State, with no restrictions).

Since Leaf's allegations that The Nike Ad promotion was misleading  must be accepted as true, the First Amendment Defense of Defendant fails.

Regulating misleading commercial speech is exactly what the MCPA does in this case.

## V. CONCLUSION

For all the reasons set forth herein this Court must **DENY** Defendant Nike's motion in its entirety.

Dated: August 13, 2020

Respectfully submitted,

/s/Martin H. Leaf (P43202)          Grosse Pointe Woods, MI 48236
Martin H. Leaf PLLC                 248.687.9993 Fax. 248.479.0493
Attorney for Plaintiff              leafmartin@gmail.com
19641 Mack Ave.

25

/s/ Douglas MacLean                        /s/Herman Petzold
Douglas MacLean (P48880)                  Herman Petzold(P41760)
Attorney for Plaintiff                    19641 Mack Ave.
19641 Mack Ave.                           Grosse Pointe Woods, MI 48236
Grosse Pointe Woods, MI 48236             Main: (616) 881-2127
Tel. (313) 928.5310                       Cell: (616) 881-2127
dougmaclean@hotmail.com                   hgp_3@yahoo.com

# INDEX OF EXHIBITS

| INDEX | DESCRIPTION |
|---|---|
| 1 | The Nike Ad opening screen. |
| 2 | Subliminal Swastika on the Nike logo. |
| 3 | The Nike Ad on a Thumb Drive. |
| 4 | Hooked Nose Jew Devil with Kike Crown. |
| 5 | Subliminal letters spelling "Devil" |
| 6 | Typography picture of Devil. |
| 7 | Subliminal Devil on "The Jew". |
| 8 | Subliminal Devil on "The Jew". |
| 9 | Nonconscious word "Kike". |
| 10 | Nonconscious ISIS with axe. |
| 11 | Nonconscious Hebrew "Come on vulture." |

<u>INDEX</u>                                 <u>DESCRIPTION</u>

12                          Clear Jewish Star subliminal Israeli flag.

13                          Subliminal Israeli flag.

14                          Nonconscious masturbation and ejaculation.

15                          Nonconscious Nike logo rubbing against penis.
                            Nonconscious stigmata.

16                          Child Pornography.

16.1                        Subliminal Penis

17                          Part of web article Leaf first viewed.

18                          Part of web article Leaf viewed second with
                            Defendant Nike denial of anti-Semitism.

19                          Part of web article Leaf viewed third with link to
                            The Nike Ad.

20                          A side by side comparison of Nike's Racist Hateful
                            affront to Jews compared to a similar affront to
                            Blacks.



*Ex.1 FAC Ex. AC 7. The Last Game* opening frame.



EX. 2  FAC EX. AC25.1   Detail on wall highlighted showing subliminal Nazi swastika on The Nike Ad logo – top ad to the right - in the opening frame. Notice die and flaming soccer ball on either side of skull.

# EX. 3
# THUMB DRIVE
# OF THE NIKE AD



Ex. 4. FAC Hooked nose Jew,  Kike Crown, typography Devil, Devil Tail in purple highlighted to the right,  Fake crown shadow highlighted to the left, Child pornography. Flashed too quick to see.



Ex. 5  FAC Ex. AC 16 – Devil subliminally spelled out.



*Ex. 6. FAC Ex. 17.  "Devil" is also drawn using the letters, a well known dual perception technique - typography.*



*Ex. 7. FAC Ex. 38. Satanic face on "The Jew" Circled, with a desecrated Jewish religious symbol. One of many.*



Ex. 8 FAC Ex. AC 39.  "The Jews" with subliminal Devils.



*Ex. 9. Subliminal Kike with Devil's Tail quickly flashed.* The significance of the Devil and Devil's tail are explained further herein.



*Ex. 10. Subliminal ISIS with an Axe. In late 2013 when The Nike Ad was being worked on, ISIL became ISIS, a terrorist enemy of America, that murdered many innocent Americans, including American civilians  James Foley, Steven Sotloff, and Kayla Mueller. ISIS filmed many mass murders by cutting off the heads of the innocent victims, while the victims were alive, and filming the murders professionally.*



Ex. 11. Cable car in The Nike Ad taking place in Rio has Hebrew letters for a sinister purpose.



*Ex. 12. Jewish Stars which Nike claims are soccer balls on the bad guys, with deliberately hard to consciously perceive  Israeli flags in the background highlighted.*



*Ex. 13.     Israeli flag quickly flashed. Note the blue horizontal stripes.*



*Ex. 14. FAC Ex. AC 20. Soccer player masturbating on his back with the promised adorable dog on his leg which was the lure especially for children and adolescents, as alleged in the proposed SAC. The player on the far left is ejaculating with the fake excuse that this is mere lighting, as explained more fully herein.*



Ex. 15. FAC Ex. AC 49. The Nike Ad has a Nike shoe with Nike Logo rubbing alongside the shaft of the penis. What is really a creepy and illegal form of Nike promotion *is that the animated Neymar rubs his shoe with the Nike logo up and down alongside the penis. All of this nonconscious, and a very disturbing self-promotion of Nike to children.* Notice on both hands of the statue there are stigmata – nail wounds to Jesus. Ex. 15. Blow up to the left is unclear but depicts the statues in the back holding what appears to be their penises, which will be clearer in the proposed SAC.



*Ex. 16. Detail from Ex. 4. Erect adolescent's or child's penis and therefore Child pornography flashed quickly like "flashers" do. Nike drew the blurry soccer ball and drew the legs in a manner to flash the erect penis, yet have an excuse that this was a knee, as developed more fully herein.*



Ex. 16.1. Subliminal penis highlighted from The Nike Ad. This could be one of the "jokes" The Nike Ad was "loaded with" the producer Jon Saunders was alluding to (FAC p. 51 fn 9).



Ex. 17. Leaf viewed this first, including the link to Nike's denial which the proposed SAC makes explicit.



Ex. 18. Leaf viewed this second, including Nike's denial which the proposed SAC makes explicit, but is implicit in the FAC.



Ex. 19. Leaf viewed this third, including the link to The Nike Ad which the proposed SAC makes explicit, but is implicit in the FAC.



Nike's apparent disgusting stereotypic depiction of a terrifying black person, with an added gun formed typographically from "criminal", and added watermelon.



Nike's disgusting stereotypic depiction of a Jew, with a Devil formed typographically from "Devil". Flashed quickly.

Exhibit 20. Roughly equivalent "insane" messages of hate. The first Racist Hate against Blacks, the second, Racist hate against Jews. The terrifying face on the left was in The Nike Ad. The watermelon and typographical gun was added to make the analogy to the actual image from the Nike Ad – highlighted – to the right of the terrifying face.